UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ADRIAN MIGUEL COLON,** **TDCJ No. 02251175,** | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL NO. SA-23-CV-01155-XR |
| **BOBBY LUMPKIN, Director,** **Texas Department of Criminal Justice,** **Correctional Institutions Division,** | § § § § | |
| Respondent. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Adrian Miguel Colon's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (ECF No. 1). In the § 2254 petition, Petitioner challenges the constitutionality of his 2019 state court conviction for possessing a firearm as a felon, arguing that the evidence was insufficient to support his conviction and that he was denied the right to effective assistance by both his trial and appellate counsel. Also before the Court is Respondent Bobby Lumpkin's Answer to Petitioner's § 2254 petition. (ECF No. 15).

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

**A.    The Offense**

In its opinion affirming Petitioner's conviction on direct appeal, the Texas Thirteenth Court of Appeals accurately summarized the evidence presented at Petitioner's trial:

On January 31, 2018, Troopers Jason McCarrell and James Vinson with the Texas Highway Patrol were patrolling San Antonio after midnight when they observed a vehicle turn into the parking lot of a closed business and pick up a passenger. The troopers subsequently conducted a traffic stop after the vehicle made a wide right turn. A check on the vehicle's registration came back as expired. [Petitioner] drove the vehicle, Shirley Martinez was the front passenger, and Jesus Guerrero was the rear passenger. The traffic stop was recorded by the troopers' dashcam and played for the jury.

Although the vehicle was registered to another person, [Petitioner] claimed that he purchased the vehicle the previous day. When asked about the contents of a backpack visible in the back seat, [Petitioner] initially claimed that Guerrero owned the backpack. After Trooper McCarrell informed [Petitioner] that he observed Guerrero get in [Petitioner]'s car without a backpack, [Petitioner] acknowledged that the backpack and its contents, including drug paraphernalia and a "clip," belonged to him. Trooper McCarrell searched the backpack and confirmed that it contained baggies, a scale, and a loaded magazine for a .40 caliber Glock handgun. Trooper McCarrell was able to identify the manufacturer and caliber of the magazine based on his experience and the information contained on the magazine, such as the Glock logo.

Trooper McCarrell described [Petitioner] as "very nervous from the get-go," saying that anytime there was silence, [Petitioner] "would talk, ramble, would repeat himself over and over again, and move around a lot." When Trooper McCarrell asked if there was a gun to go along with the magazine, [Petitioner] told him he could not be around guns because he was a felon. However, [Petitioner] indicated that Martinez had something to tell him, insinuating there was a gun, and that it belonged to Martinez.

As Trooper McCarrell approached Martinez, he noticed that she was "crying very heavily." Trooper McCarrell was suspicious of [Petitioner]'s version of events so he asked Martinez a series of questions to test her knowledge about the gun. Although Martinez initially admitted the gun was hers and that she uses it for protection, she could not tell Trooper McCarrell the gun's location in the car, the gun's manufacturer and caliber, or how to operate the unique safety mechanisms on a Glock firearm. The only thing she knew about the gun was that it was black. Under Trooper McCarrell's continued questioning, Martinez eventually recanted her prior statement and said, "It's not my gun . . . It was in the car when he picked me up." Officers later arrested Martinez for possession of a controlled substance after a search revealed that she was carrying what appeared to be heroin and methamphetamine.

Meanwhile, Trooper McCarrell conducted a search of the car and located a loaded .40 caliber Glock handgun in the center console and a .40 caliber bullet in

the cup holder of the center console.[1]  After [Petitioner] was arrested for unlawful possession of a firearm and *Mirandized*, he continued to deny that the gun belonged to him but offered that his fingerprints would likely be on the gun because he removed the magazine earlier in the day.  Subsequent forensic testing did not detect any latent fingerprints on the gun, magazine, or ammunition.

*Colon v. State*, No. 13-19-00160-CR, 2020 WL 5051371, at *1-2 (Tex. App.—Corpus Christi-Edinburg, Aug. 20, 2020, pet. ref'd); (ECF No. 13-9 at 2-4).

**B.**     **Procedural History**

After hearing all of the evidence, a Bexar County jury convicted Petitioner of unlawful possession of a firearm by a felon.  *State v. Colon*, No. 2018CR5038 (399th Dist. Ct., Bexar Cnty., Tex. Mar. 5, 2019); (ECF No. 13-6 at 39-40).  Following a separate punishment hearing, the trial court sentenced Petitioner to thirty-five years of imprisonment as a habitual offender.  *Id*.  The Texas Thirteenth Court of Appeals affirmed his conviction on direct appeal.  *Colon*, 2020 WL 5051371; (ECF No. 13-9).  The Texas Court of Criminal Appeals then refused his petition for discretionary review.  *Colon v. State*, No. 0921-20 (Tex. Crim. App. Jan. 13, 2021); (ECF No. 13-5).

Thereafter, Petitioner challenged the constitutionality of his conviction by filing an application for state habeas corpus relief.  *Ex parte Colon*, No. 94,760-01 (Tex. Crim. App.); (ECF No. 13-22 at 4-19).  Based, in part, on the findings of the state habeas trial court, the Texas Court of Criminal Appeals eventually denied the application without written order on July 12, 2023. (ECF No. 13-23).

Two months later, Petitioner initiated the instant proceedings by filing a petition for federal habeas corpus relief.  (ECF No. 1).  In the petition, Petitioner raises the following allegations:  (1) the evidence was insufficient to support the conviction, (2) his trial counsel rendered ineffective

---

[1] The recovered gun contained a magazine, meaning the troopers recovered two .40 caliber Glock magazines, one in the backpack and one in the gun.

3

assistance before and during trial, and (3) his appellate counsel rendered ineffective assistance by failing to raise meritorious claims on direct appeal. *Id*. at 8-15.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Analysis

**A.      Sufficiency of the Evidence (Claim 1)**

Petitioner first contends the evidence was insufficient to support his conviction for unlawful possession of a firearm by a felon. According to Petitioner, the State failed to prove that he exercised "actual care, custody, control, or management" of the firearm in question as required by Sections 46.04(a)(1) and 1.07(a)(39) of the Texas Penal Code. This allegation was raised and rejected during Petitioner's direct appeal proceedings. As discussed below, Petitioner fails to demonstrate the state court's rejection of the allegation was contrary to, or an unreasonable application of, Supreme Court precedent.

1.      The *Jackson* Standard

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The Court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. In applying this standard, the Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier

of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, all credibility choices and conflicts in inferences are to be resolved in favor of the verdict. *United States v. Resio-Trejo,* 45 F.3d 907, 911 (5th Cir. 1995); *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994).

In addition, the AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As the Supreme Court has explained:

> The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citations omitted).

2.  Applying the *Jackson* Standard

Petitioner raised his insufficient evidence claim during his direct appeal proceedings, but the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision" providing particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Wooten v. Lumpkin*, 113 F. 4th 560, 566 (5th Cir. 2024). In other words, the Court must look to the last reasoned state judgment that considered and rejected Petitioner's insufficient evidence claim when reviewing the claim under the doubly deferential standard set forth in *Jackson*. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, the last reasoned state court decision was issued by the Texas Thirteenth Court of Appeals, which concluded that there was sufficient evidence to support Petitioner's conviction:

> **B.     Applicable Law**
>
> When, as here, the firearm is found in a vehicle, appellate courts consider a non-exclusive list of factors or "affirmative links" to determine if possession was established, including whether: (1) the firearm was in plain view; (2) the defendant was the owner of the vehicle in which the firearm was found; (3) the defendant was in close proximity and had ready access to the firearm; (4) the firearm was found on the same side of the vehicle as the defendant; (5) the defendant's conduct indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (6) the defendant had a special connection or relationship to the firearm; (7) the place where the firearm was found was enclosed; (8) occupants of the vehicle gave conflicting statements about relevant matters; (9) the defendant was the driver of the vehicle in which the firearm was found; (10) other contraband was found on the defendant; (11) the defendant attempted to flee; and (12) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested. *Harris v. State*, 532 S.W.3d 524, 529 (Tex. App.—San Antonio 2017, no pet.) (citing *Williams v. State*, 313 S.W.3d 393, 397-98 (Tex. App.—Houston [1st Dist.] 2009, pet ref'd)).  Our review turns on the quality, not quantity, of affirmative links present. *Id.* (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)).  Further, the absence of certain affirmative links in not evidence of innocence to be weighed against those that are present. *Id.* (citing *Williams*, 313 S.W.3d at 398).
>
> **C.     Analysis**
>
> The only element [Petitioner] disputes is whether the evidence was sufficient to prove that he possessed the gun.  Just as he argued at trial, [Petitioner] points out that there were several affirmative links between Martinez and the gun: she was in close proximity and had ready access to the firearm; she initially claimed ownership of the gun; she was crying, which may indicate a consciousness of guilt; and she was found with other contraband in her possession. *See Harris*, 532 S.W.3d at 529.  On the other hand, contrary to [Petitioner]'s suggestion, there were also numerous affirmative links between [Petitioner] and the gun: [Petitioner] was the driver and purported owner of the vehicle; his proximity and access to the gun were equal to Martinez's; the gun was located in an enclosed area; Trooper McCarrell described [Petitioner] as "very nervous"; [Petitioner] was also in possession of other contraband; after initially lying to Trooper McCarrell, [Petitioner] admitted to owning the backpack and its contents, including the matching magazine; and [Petitioner] admitted to knowing of the gun's existence in the car. *See id.* Additionally, and perhaps most importantly, [Petitioner] admitted to previously exercising actual control over the gun that same day to the extent that he expected his fingerprints to be found on the gun. *See id.*

> We presume the jury resolved the conflicting inferences that can be drawn from this evidence in favor of the prosecution. *See Bartlett*, 270 S.W.3d at 150. For example, the jury credited the State's theory that Martinez was covering for [Petitioner] when she initially claimed the gun and that her subsequent recantation was the actual truth. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony."). Moreover, the affirmative links tying [Petitioner] to the gun were not only numerous, but substantial in their cumulative effect. *See Harris*, 532 S.W.3d at 529. Viewing the evidence in the light most favorable to the prosecution, we conclude that any rational juror could have found that [Petitioner] possessed the gun beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; [*Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014)]; *Harris*, 532 S.W.3d at 529. We overrule [Petitioner]'s sole issue.

*Colon*, 2020 WL 5051371, at *2-3; (ECF No. 13-9 at 5-7).

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. Again, a state appellate court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). As with the state appellate court, this Court has independently reviewed the record and finds the evidence sufficient to support the verdict. Thus, viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that she is entitled to relief under *Jackson*. Federal habeas relief is therefore denied.

**B.     Trial Counsel (Claim 2)**

Petitioner next argues he was denied the right to effective assistance of counsel by his attorney at trial, James Oltersdorf. Specifically, Petitioner contends that counsel failed to (a) subpoena and call Shirley Martinez as a witness for the defense, (b) adequately prepare for trial by viewing the dashcam recording of his arrest, and (c) object to hearsay testimony given by State witness Jason McCarrell. These allegations were raised during Petitioner's state habeas

8

proceedings and rejected by the Texas Court of Criminal Appeals. As discussed below, Petitioner fails to demonstrate the state court's rejection of the allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

    1.    The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

9

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

2. Uncalled Witness

Petitioner first asserts that counsel was ineffective for failing to interview or call Shirley Martinez as an alibi witness. According to Petitioner, Martinez would have testified that the firearm in question belonged to her. Petitioner raised this allegation during his state habeas proceedings. In response, trial counsel submitted an affidavit wherein he addressed Petitioner's assertion:

> Ms. Martinez had stated a "gun was in the car," and because she had an extensive drug record, with cases pending, I was afraid she might assist the State by inadvertently testifying about her association with [Petitioner] in the past, which went back several years. And on the video she did not state the gun was hers. Ms. Martinez was aware of [Petitioner]'s numerous other drug felonies that were pending, and I had concerns that under cross-examination she could be asked about her participation in those offenses or reveal information that would then be in front of the jury. I believe that there was a better chance for [Petitioner]'s gun possession case at trial without Ms. Martinez's testimony since the jury could perhaps decide that since there were two people in the car, and Ms. Martinez had heroin, that she was in possession of the gun.

> In this Writ, [Petitioner] believes that Ms. Martinez was in "constructive possession" of the gun and indicates she was "in shock," which is why she didn't say the gun was hers. The evidence shows [Petitioner] was driving the vehicle and was the owner of the vehicle, and the gun was in his possession as testified to by Trooper [McCarrell]. Ms. Martinez was only a passenger in the car.

(ECF No. 13-22 at 46-47). The state habeas trial court found trial counsel's affidavit credible and truthful, concluding that counsel's strategic decision not to call Martinez as a witness was reasonable. *Id*. at 54-57. These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. (ECF No. 9-61). These determinations, including the trial court's credibility findings and finding that counsel's choices were strategic, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling was contrary to or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. Under *Strickland*, "counsel has wide latitude in deciding how best to represent a client. . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Indeed, counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).

In this case, trial counsel's affidavit—adopted by the state habeas court and ultimately by the Texas Court of Criminal Appeals—explained why he did not subpoena Martinez or call her to

11

testify. He stated that Martinez had an extensive criminal history, and she was also aware of Petitioner's extensive history, including several pending drug charges. Counsel explained that he was concerned Martinez might inadvertently testify about her association with Petitioner in the past or reveal information about Petitioner's pending drug charges on cross-examination. For these reasons, counsel believed Petitioner had a better chance at trial without testimony from Martinez. Petitioner has not pointed to any evidence rebutting counsel's assertions, much less demonstrated that state court's ruling on trial counsel's investigation and strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Furthermore, unsupported claims regarding uncalled witnesses "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on an IATC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an IATC claim).

Petitioner fails to provide any evidence that Martinez was willing to testify that the gun belonged to her. Instead, Petitioner offers nothing but his conclusory assertions that Martinez would have testified favorably on his behalf. Such "conclusory statements regarding the content of the uncalled witness's testimony are insufficient to demonstrate ineffective assistance." *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010); *see also United States v. Demik*, 489 F.3d

644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (citation omitted).  As a result, Petitioner has not shown counsel's performance was deficient, much less that the state court's denial of this claim was an unreasonable application of *Strickland*.  Thus, under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive.  *See Richter*, 562 U.S. at 105.

      3.      <u>Failure to Prepare</u>

Petitioner next alleges that counsel was ineffective for failing to adequately prepare for trial by viewing the dashcam recording of his arrest.  Petitioner cites to a moment during a hearing on counsel's motion to suppress his confession where counsel admits he had yet to view the recording.  (ECF No. 13-17 at 93).  According to Petitioner, counsel was unaware of the circumstances surrounding the statements he made while detained by police and thus unable to adequately cross-examine Trooper McCarrell regarding these statements.

Petitioner raised this allegation during his state habeas proceedings.  As with the previous allegation, trial counsel responded to Petitioner's assertion in his affidavit to the state habeas trial court:

> [Petitioner] and I reviewed this video before trial, and I have enclosed at the bottom of the indictment his signature and date as proof that he reviewed the file. (Exhibit 1).
>
> [Petitioner] talks about a redacted DVD, but the DVD was played in its entirety to the jury.  It was properly authenticated under TRE 90l.  On the video, no one threatens Ms. Martinez as to "taking her kids away."
>
> [Petitioner] wrote a note to counsel and it is enclosed as Exhibit 2.  This note is self-explanatory and was written at the conclusion of trial indicating [Petitioner]'s approval of my handling of his trial.  He calls me "Mr. Jim."  Please compare the signature on [Petitioner]'s letter of December 17, 2021, to the signature on this note to me.  The letter is enclosed as Exhibit 3.

(ECF No. 13-22 at 45-46).  The state habeas trial court found trial counsel's affidavit credible and concluded that Petitioner failed to established the deficiency prong of the *Strickland* analysis.  *Id*.

13

at 54-56. These findings and conclusions were then adopted by the Texas Court of Criminal Appeals. (ECF No. 13-23).

Petitioner fails to show that the state court's ruling on trial counsel's performance was unreasonable. *Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). But in assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments. *Strickland*, 466 U.S. at 691. This wide latitude given to trial counsel includes the discretion to determine how best to utilize limited investigative resources available. *Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

Here, the record confirms counsel's statement that he viewed the dashcam video prior to trial. While counsel initially admitted during his cross-examination of Trooper McCarrell *at the suppression hearing* that he had not watched the video, both the trial court and counsel watched the video during a recess prior to the court ruling on the motion to suppress. (ECF No. 13-17 at 93, 106-07). Counsel's subsequent closing argument at the suppression hearing refers to the video, thus demonstrating that counsel watched the video at the break. *Id*. at 109-17. Even before viewing the video, however, counsel thoroughly cross-examined Trooper McCarrell about the encounter (ECF No. 13-17 at 82-106), contradicting Petitioner's assertion that counsel's failure to view the video left him "totally unaware of the circumstances surrounding the statements." (ECF No. 1 at 14). Thus, based on this record, Petitioner fails to demonstrate that trial counsel was deficient for failing to review the dashcam recording before trial, much less that the state court's

rejection of this allegation was unreasonable under *Strickland*. Consequently, given the deference afforded state court determinations on federal habeas review, relief is denied. *Richter*, 562 U.S. at 103.

    4.    <u>Failure to Object</u>

In his final IATC claim, Petitioner alleges counsel was ineffective for failing to object to hearsay testimony given by Trooper McCarrell, the prosecution's main witness. Trooper McCarrell testified that he asked Shirley Martinez whether the gun in question belonged to her, and she initially responded that it did. (ECF No. 13-17 at 137). He also testified that Martinez later admitted the gun was not hers after being questioned. *Id*. at 152. Petitioner contends that both of these statements were inadmissible hearsay under the Texas Rules of Evidence and that counsel should have objected.[2]

As with Petitioner's previous IATC claims, Petitioner raised this allegation during his state habeas corpus proceedings. (ECF No. 13-22 at 15) ("Counsel failed to object to the State's witness, Trooper McCarrell, in their evidence-in-chief, presenting hearsay testimony by stating Ms. Martinez said the gun belonged to her."). Based on counsel's unequivocal assertion in his state habeas affidavit that he *did* object to this testimony as hearsay, both the state habeas trial court and later the Texas Court of Criminal Appeals rejected Petitioner's allegation. (ECF Nos. 13-22 at 47, 57; 13-23). Even a cursory review of the record, however, indicates that this simply is not true. (ECF No. 13-17 at 125-65) (testimony of Trooper McCarrell wherein no objections based on hearsay were made).

---

[2]    In his Answer, Respondent erroneously construed Petitioner's IATC claim as a complaint that counsel failed to object to the admission of the dashcam recording during McCarrell's testimony. (ECF No. 15 at 2, 15, and 23). While Petitioner did raise such a claim in his state habeas application, it is not the claim set forth in his federal petition. (ECF No. 1 at 14).

Because it appears that the state court's adjudication of Petitioner's claim was based on an unreasonable determination of the facts, this Court will not apply the deferential scheme laid out in § 2254(d) and will instead apply a *de novo* standard of review. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (finding courts may engage in *de novo* review "when it is unclear whether AEDPA deference applies[.]"). But even under *de novo* review, "the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. Again, under the *Strickland* standard, counsel has "wide latitude" in deciding how best to represent a client, and his choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Yarborough*, 540 U.S. at 8; *Strickland*, 466 U.S. at 690. For this reason, counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

Petitioner has not demonstrated that counsel's failure to raise a hearsay objection constitutes ineffective assistance under the *Strickland* standard. To start, it is unclear why counsel would object to testimony stating that Martinez proclaimed ownership of the gun, as such testimony undoubtedly would benefit Petitioner. It is also unclear whether such a statement would be considered inadmissible if counsel raised a hearsay objection, as Martinez's statement appears to be a statement against interest, an exception to the rule against hearsay. *See* Tex. R. Evid. 803(24). Nevertheless, assuming Petitioner is referring to Martinez's subsequent admission (via McCarrell's testimony) that the gun was *not* hers, any objection by counsel would have been futile

16

because the admission was also on the dashcam video that was found admissible by the trial court and played for the jury. (ECF No. 13-17 at 118, 146).

Thus, even if Petitioner could establish that counsel's failure to raise a hearsay objection to McCarrell's testimony constituted deficient performance in this case, he still fails to demonstrate that the alleged error was prejudicial to his defense. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner fails to do so, as the subject of McCarrell's testimony—Martinez's statements regarding possession of the gun—would have been before the jury regardless of whether counsel raised a hearsay objection. Petitioner has provided no argument to the contrary, much less demonstrated that the counsel's performance was unreasonable under *Strickland*. Relief is therefore denied.

C.     **Appellate Counsel (Claim 3)**

In his final allegation, Petitioner contends he received ineffective assistance of counsel during his direct appeal proceedings. Specifically, Petitioner faults counsel for: (1) failing to argue that a biased juror was seated on the jury, and (2) failing to challenge the admissibility of his statements to police. Petitioner provides no argument or evidence supporting either of these allegations—indeed, each allegation was raised in a single sentence. (ECF No. 1 at 15). Nor does Petitioner attempt to demonstrate that counsel's failure to raise the allegations was objectively unreasonable and affected the outcome of his direct appeal proceedings. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding two-pronged *Strickland* analysis applies equally to claims concerning both trial and appellate counsel).

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas

corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).

Here, Petitioner's allegation is conclusory, speculative, and unsupported by any argument or evidence. But "absent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011). Thus, Petitioner's claim is denied. *See Demik*, 489 F.3d at 646 ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

After careful consideration, the Court concludes that Petitioner failed to establish that the state court's rejection of the above claims on the merits during either his direct appeal or state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during his state trial, appellate, and habeas corpus proceedings. Petitioner also fails to demonstrate the merit of Claim 2(c), even under a *de novo* standard of review. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.  Federal habeas corpus relief is **DENIED** and Petitioner Adrian Miguel Colon's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.  No Certificate of Appealability shall issue in this case; and

3.  All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this 1st day of November, 2024.

                                                                                       _____
                                                                                       XAVIER RODRIGUEZ
                                                                                       UNITED STATES DISTRICT JUDGE